UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:20-CR-55 JD |
| DIANGELO CHICK | |

**OPINION AND ORDER**

On July 8, 2020, a grand jury indicted Diangelo Chick on one count of being a felon in possession of a firearm. (DE 1.) Mr. Chick later pleaded guilty to this sole count. (DE 35.) Sentencing was initially set for January 19, 2022. (DE 34.) However, this sentencing was continued due to a potential error in how the Final Presentence Investigation Report calculated Chick's base offense level. (DE 48.)

In its Final Presentence Investigation Report, Probation calculated Chick's base offense level as 22 (DE 43 at ¶ 16), relying on U.S.S.G. § 2K2.1(a)(3), which states that the base offense level is:

> 22, if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine . . . and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense[.]

Section 2K2.1(a)(3) defines "crime of violence" by reference to § 4B1.2. The issue in front of the Court concerns the latter prong of § 2K2.1(a)(3): whether Chick's prior conviction for conspiracy to commit murder qualifies as a "crime of violence" under § 4B1.2 as it stands today. The Government argues that it does qualify as a "crime of violence" (DE 49), while the Defense argues it does not (DE 50).

The Government's argument primarily relies on *United States v. Raupp*, 677 F.3d 756 (7th Cir. 2012). However, as the Court will explain below, *Raupp*'s holding no longer applies to the Guidelines' definition of "crime of violence." There are two reasons for this. First, the Guidelines have changed, undergoing a significant amendment in August 2016, after *Raupp* was decided. Second, there has been intervening caselaw which is more applicable to the present-day version of the Guidelines. This caselaw following *Raupp* demonstrates that conspiracy to commit murder is not a "crime of violence" under § 4B1.2.

However, this caselaw also has an unusually complex history. *See United States v. Adams*, 934 F.3d 720, 729 (7th Cir. 2019) ("The now-abandoned residual clause of the definition of crimes of violence in § 4B1.2 [has] had a complicated history as we and the Supreme Court have struggled with vagueness challenges to the similar residual clause in the Armed Career Criminal Act."). Due to this complex history, the Court will first examine *Raupp*, as well as the Guidelines as they existed when it was decided, and explain why its holding no longer has precedential value as applied to "crime[s] of violence." The Court then will analyze the Guidelines as they stand today, as well as the applicable Seventh Circuit caselaw. Ultimately, the Court finds that conspiracy to commit murder is not a "crime of violence" under § 4B1.2.

**A.    Discussion**

Section 4B1.2 has changed over the years. However, in 2012, when *Raupp* was decided, § 4B1.2 defined "crime of violence" as follows:

> **(a)** The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > **(1)** has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> **(2)** is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise *involves conduct that presents a serious potential risk of physical injury to another*.

§ 4B1.2 (2009) (emphasis added). The first subparagraph is known as the elements clause, the second subparagraph as the enumerated clause, and the italicized portion as the residual clause. *United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016). A separate paragraph in § 4B1.2 defined "controlled substance offense." § 4B1.2 (2009). Importantly, § 4B1.2 had an application note which specified that "crime of violence" and "controlled substance offense" included "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." § 4B1.2, comment (n.1) (2009). The application note went on to say that "crime of violence" included certain crimes, such as "murder, manslaughter, kidnapping," as well as others. *Id.*

The amount of deference owed to application notes is different than the amount of deference owed to the Guidelines. While the Guidelines are "the equivalent of legislative rules adopted by federal agencies," the application notes are merely interpretations of the Guidelines, which explain how the Guidelines are applied. *Rollins*, 836 F.3d at 742 (citing *Stinson v. United States*, 508 U.S. 36, 45 (1993)). An application note has "controlling weight, *unless* it is plainly erroneous or inconsistent with the text of the guideline it interprets." *Id.* (citations omitted) (emphasis added). The application notes cannot add to the Guidelines, and they have no independent force. *Id.* So the application note of § 4B1.2 above, listing out certain qualifying crimes, such as aiding and abetting, conspiracy, and attempt, was only "enforceable [] as an interpretation of the term 'crime of violence' in the guideline itself." *Id.*

In *Raupp*, the Seventh Circuit considered whether conspiracy to commit robbery was a "crime of violence" under the Guidelines. 677 F.3d at 757. While robbery was clearly a "crime of violence" under existing precedent, the defendant argued that *conspiracy* to commit robbery

3

was not a "crime of violence" because Application Note 1 did not apply. *Id.* at 757–58. It was "indisputable" that conspiracy to commit robbery could not come through the elements clause or the enumerated clause. *Raupp*, 677 F.3d at 762 (Wood, J., dissenting) (dissenting from the majority on other grounds). As Judge Wood noted, "[c]onspiracy [could] not be used as a predicate for [Raupp's] guidelines calculation . . . unless it [fell] within the 'residual clause.'" *Id.*

The Seventh Circuit in *Raupp* held that the application note's list of inchoate crimes did not conflict with the entirety of § 4B1.2, including both the definition of "crime of violence" and "controlled substance offense." *See Raupp*, 677 F.3d at 759 ("There cannot be a conflict because the text of § 4B1.2(a) does not tell us, one way or another, whether inchoate offenses are included or excluded. The note says they are included."); *see also United States v. Adams*, 934 F.3d 720, 729 (7th Cir. 2019) (finding that "the *Raupp* analysis . . . remains sound as applied to the Guidelines' definitions of controlled substance offenses").

The Seventh Circuit's reasoning relied heavily on the Supreme Court case *James v. United States*, 550 U.S. 192 (2007). In *James*, the Supreme Court considered whether attempted burglary was a "violent felony" under the Armed Career Criminal Act (which is defined in the same way that § 4B1.2 defines "crime of violence"). The Court first found that, even though burglary was included in the enumerated clause, *attempted* burglary could not come in under the enumerated clause, because it did not meet the generic definition of burglary. This reflects the proposition that inchoate crimes are typically *separate* crimes than the actual completed crimes, with distinct elements. However, the Court concluded that attempted burglary, and other attempt crimes, could potentially come through the residual clause. *James*, 550 U.S. at 201. In *Raupp*, the Seventh Circuit wrote this regarding the effect of *James*'s holding on whether the application notes conflict with the Guidelines:

4

> *James* puts to rest any doubt about whether answering the question "are inchoate offenses included" conflicts with the text. The Supreme Court held in *James* that attempted burglary (an inchoate offense) is a "violent felony" . . . As we related above, *James* does not tell us whether conspiracy to commit a violent felony is treated as a violent felony. But *James* does show that there is no *conflict* between the text of § 924(e)(2)(B)(ii) or § 4B1.2(a), and a rule treating an inchoate offense the same as the substantive offense.

*Raupp*, 677 F.3d at 759. Therefore, *Raupp*'s holding that there was no conflict between the application note and the Guidelines definition of "crime of violence" was predicated on the Supreme Court's holding in *James*. *Id*.

The Government argues that *Raupp*'s holding that the "[a]pplication [n]ote is not in conflict with the language of the Guideline" still applies. (DE 49.) However, since *Raupp*, there have been significant changes surrounding § 4B1.2 that undermine its force as precedent as applied to the definition of "crime of violence."

First, *James* was explicitly overruled in *Johnson v. United States*, 576 U.S. 591 (2015). There, the Supreme Court held that "the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." *Id.* at 606. *James*'s holding that attempted burglary could constitute a "crime of violence" within the guidelines was predicated on the residual clause being in effect. Therefore, when *Johnson* held the residual clause as being void for vagueness, the possibility that the application note conflicted with the Guidelines re-emerged, because *Raupp* relied on *James*, and *James* relied on the residual clause, which was now unconstitutional.

There were two questions that had to be decided after *Johnson*, though. First, there was the question of whether *Johnson*'s holding that the ACCA's residual clause was unconstitutional would extend to the residual clause under the Guidelines, which included identical language to ACCA, but which also had the application note. Second, there was the question of whether, if the

5

residual clause in the Guidelines was also held unconstitutionally vague, the application note now conflicted with the text of the Guidelines.

The Seventh Circuit addressed the first question in *United States v. Hurlburt*, 835 F.3d 715 (7th Cir. 2016). There, the Seventh Circuit held that *Johnson*'s holding extended to the Sentencing Guideline's residual clause. *Id.* at 725  (holding that the residual clause in § 4B1.2 was unconstitutionally vague). Accordingly, with the residual clause in the Guidelines now held unconstitutionally vague, the second question concerning whether the application note conflicted with the Guidelines re-emerged.

The Seventh Circuit in *United States v. Rollins* found that the application note now conflicted with the Guidelines and explicitly overruled *Raupp*. *Rollins*, 836 F.3d at 743. In *Rollins*, the court considered whether a crime that was listed only in Application Note 1 to § 4B1.2 (possession of a sawed-off shotgun) could qualify as a "crime of violence" after *Hulburt*, which held that the residual clause in the Guidelines was unconstitutionally vague. *Id.* at 739. The court first described the deference owed to the application notes, writing that "an application note has controlling weight unless it is plainly erroneous or inconsistent with the text of the guideline it interprets. In short, the application notes are *interpretations of*, not *additions to*, the Guidelines themselves; an application note has no *independent* force." *Id.* at 742 (citations omitted). The court then held that because the residual clause in § 4B1.2(a)(2) is unconstitutional [after *Hurlburt*], the application note's list of qualifying crimes is *inoperable* and cannot be the basis for applying the career-offender enhancement." *Id.* (citations omitted) (emphasis added). The court explained that "once the residual clause drops out" then the application note no longer interprets the enumerated clause or the elements clause, but "is in effect *adding* to the definition. And that's *necessarily* inconsistent with the text of the guideline itself." *Id.*

6

*Hulburt* was then overturned by the Supreme Court in *Beckles v. United States*, 137 S. Ct. 886 (2017). In *Beckles*, the Supreme Court held that *Johnson* did not extend to the post-booker advisory guidelines, including the career-offender guideline. *Id.* at 897 ("Because the advisory Sentencing Guidelines are not subject to a due process vagueness challenge, § 4B1.2(a)'s residual clause is not void for vagueness."). However, the Supreme Court in *Beckles* left "open the question [about] whether defendants sentenced to terms of imprisonment before [their] decision in *United States v. Booker* . . . [could] mount vagueness attacks on their sentences." *Id.* at 904 n.4 (Sotomayor, J., concurring). The Seventh Circuit, in *Cross v. United States*, then held that *Beckles* applied only to advisory Guidelines not to the mandatory sentencing rules before *Booker* in 2005. 892 F.3d 288, 291 (7th Cir. 2018) (finding that "the guidelines residual clause is unconstitutionally vague insofar as it determined mandatory sentencing ranges for pre-*Booker* defendants").

In effect, this meant that the residual clause was valid for individuals sentenced under the advisory Guidelines, post-*Booker*, but that the residual clause was invalid for individuals sentenced under the mandatory Guidelines, pre-*Booker*. However, it also meant that *Rollins*'s holding that the application note conflicted with the text of the Guidelines now only applied to the pre-*Booker* Guidelines. *See D'Antoni v. United States*, 916 F.3d 658, 664 (7th Cir. 2019) (finding that "for cases involving defendants sentenced pursuant to the pre-*Booker* mandatory Guidelines, we face the same situation we faced in *Rollins* [and that in] such instances our holding in *Raupp* has lost its tether to the text of the career-offender guideline . . .").

The Government argues that the distinction between when the Guidelines were mandatory and non-mandatory makes this an easy decision: because Chick is being sentenced when the Guidelines are non-mandatory, the application note still applies with full force. (DE 49

at 7.) If the Guidelines were the same as they were pre-August 2016, then this argument would be convincing. However, the Sentencing Guidelines' text has changed, and that change makes the holding of *Rollins* as to the role of the commentary again applicable to post-*Booker* sentencings involving inchoate crimes. In August 2016, § 4B1.2 was amended to read as follows:

> **(a)** The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> > **(1)** Has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > **(2)** Is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm . . . or explosive material.

Application Note 1 still defines "crime of violence" as including the "offenses of aiding and abetting, conspiring, and attempting to commit such offenses."

The most important change is the exclusion of the residual clause. Without the presence of the residual clause, *Rollins*'s holding is now applicable to the non-mandatory Guidelines. As the Court explained in *Rollins*, "once the residual clause drops out" then the application note no longer interprets the enumerated clause or the elements clause, but "is in effect *adding* to the definition. And that's *necessarily* inconsistent with the text of the guideline itself." *Rollins*, 836 F.3d at 742. The Seventh Circuit in *D'Antoni v. United States* emphasized that *Rollins* holding about the role of the Guidelines commentary was still good law, writing that "Beckles does not touch *Rollins'*[s] holding about the role of the Guidelines commentary." *D'Antoni*, 916 F.3d at 664.

The residual clause is now removed; so, if the inchoate crime does not fall within the enumerated clause or the elements clause, the application note is again adding to the definition of

8

"crime of violence" in the very same way that it would for an individual under the pre-*Booker* Guidelines.

Here, it is clear that conspiracy to commit murder would not fall under either the elements clause or the enumerated clause. The categorical approach is used to determine whether an offense is a "crime of violence" for Guidelines purposes. Under the categorical approach, the Court considers whether the elements of the offense match the definition of a "crime of violence" without looking to the specific underlying facts of the conviction. *See Taylor v. United States*, 495 U.S. 575, 600–02 (1990)."We first determine whether the statute in question is 'indivisible,' meaning it contains a single set of elements, or 'divisible,' meaning it contains multiple alternative elements. If a statute is indivisible, our analysis is straightforward. We then line[ ] up that crime's elements alongside those of the generic offense and see[ ] if they match." *United States v. Vesey*, 966 F.3d 694, 697 (7th Cir. 2020) (quotation marks and citations omitted). In Indiana, "[t]he essential elements of the offense of conspiracy to commit murder are: (1) the defendant (2) agreed with one or more other persons to commit the crime of murder (3) with the intent to commit murder and (4) the defendant or one of the persons to the agreement performed an overt act in furtherance of the agreement." *Redman v. State*, 743 N.E.2d 263, 267 (Ind. 2001). First, none of the elements in conspiracy to commit murder require that the state prove "as an element the use, attempted use, or threatened use of physical force against the person of another," so conspiracy to commit murder does not come through the elements clause. *See* U.S.S.G. § 4B1.2. Second, while the exact definition of generic murder has not been ruled on, it certainly requires that there be an "unlawful killing" of another human being.[1] Conspiracy

---

[1] "The common law recognized no degrees of murder; all *unlawful killing* with malice aforethought received the same punishment — death." *Schad v. Arizona*, 501 U.S. 624, 648 (1991) (citations and quotations omitted). Federal law also defines murder as "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111. Numerous states have similar definitions, each involving the killing of a person. *See People v. Elmore*, 325 P.3d 95,

9

to commit murder in Indiana does not require that another human being be killed unlawfully; it merely requires an overt act. Therefore, it would not come in under the enumerated clause either.

Because conspiracy to commit murder does not fall under the enumerated clause or the elements clause, the application note is *adding* to the Guidelines, not merely interpreting them. *See Rollins*, 836 F.3d at 742 (holding that "once the residual clause drops out" then the application note no longer interprets the enumerated clause or the elements clause, but "is in effect *adding* to the definition. And that's *necessarily* inconsistent with the text of the guideline itself"); *see also United States v. Raupp*, 677 F.3d 756, 762 (7th Cir 2012) (Wood, J., dissenting) ("Raupp argues that the inchoate crime of which *he* was convicted – conspiring to commit robbery – is not (1) a crime that has physical force as an element; (2) a crime listed in the Guideline . . . [which are] two points [that] are indisputable.").

The Government argues that there are two recent cases from the Seventh Circuit which upheld Application Note 1 as applied to controlled substance offenses: *United States v. Adams*, 934 F.3d 720 (7th Cir. 2019), and *United States v. Smith*, 989 F.3d 575, 578 (7th Cir. 2021). The Government asserts that "there is no reason to include inchoate controlled substance offenses but not inchoate crimes of violence." (DE 49 at 6.) The Court disagrees, finding that there are textual differences in the Guidelines justifying this difference, and that neither *Adams* nor *Smith* apply to "crime[s] of violence."

---

957 (Cal. 2014); *People v. Lane*, 862 N.W.2d.446, 458 (Mich. Ct. App. 2014); *Commonwealth v. Packer*, 168 A.3d 161, 168 (Pa. 2017). The generic definition of murder would clearly require the death of a human being, while conspiracy to commit murder does not.

First, there are significant textual differences between how Guideline § 4B1.2 define "crime[s] of violence" and "controlled substance offense[s]" that explain the different treatment. Section 4B1.2 defines a "controlled substance offense" as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that *prohibits* the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

§ 4B1.2(b) (emphasis added). The application note then specifies that "controlled substance offense" includes the offenses of aiding and abetting, conspiring, and attempting to commit such offenses. U.S.S.G. § 4B1.2, comment (n.1). The usage of "prohibits" in the definition of "controlled substance offense" is a significant textual distinction from the Guidelines definition of "crime of violence." For example, in *United States v. Lange*, 862 F.3d 1290, 1295 (11th Cir. 2017), the Eleventh Circuit engaged in a textual analysis of the word "prohibits" in § 4B1.2, finding that it could mean "to ban or exclude . . . from an action or place; to prevent, hinder." Prohibiting inchoate crimes, such as attempted manufacturing, or conspiring to manufacture drugs would "hinder[] manufacture even though it [would] ban conduct that is not itself manufacturing." *Id.* In *United States v. Richardson*, 958 F.3d 151, 155 (2d Cir. 2020), the Second Circuit similarly said that Application Note 1 applies to controlled substances offenses because "prohibits" could mean "to prevent [or] hinder" and prohibiting attempting to distribute a controlled substance would hinder the distribution of the controlled substance. Because the Guidelines definition for "controlled substance offense" could be interpreted to include inchoate crimes, the application note's list of inchoate crimes does not conflict with the guidelines and receives deference.

Unlike "controlled substance offense," the definition of "crime of violence" under the Guidelines cannot be interpreted to include inchoate crimes. Rather, "crime of violence" is

11

defined as "any offense . . . punishable by imprisonment for a term exceeding one year, that— (1) *has* as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) *is* murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm . . . or explosive material . . . ." U.S.S.G. § 4B1.2 (emphasis added). Unlike "prohibits," which can be interpreted to include any offense that hinders manufacture or distribution of controlled substance, "is" cannot be interpreted so flexibly. "Controlled substance offense" is defined by function (i.e., whether the activity hinders manufacture of distribution), but "crime of violence" is defined by "enumerating particular substantive crimes" and elements. *United States v. Chappelle*, No. 13-CR-986-LTS, 2020 WL 5441541, at *4 (S.D.N.Y. Sept. 9, 2020). For crimes of violence, the question is not whether an offense hinders public safety, or increases the chances of violence, rather the question at hand is whether there is a reasonable interpretation of the Guideline where conspiracy to commit murder *is* murder. The categorical approach has been used to answer this question for decades:

> [T]he enhancement provision [in ACCA] always has embodied a categorical approach to the designation of predicate offenses. In the 1984 [ACCA] statute, "robbery" and "burglary" were defined in the statute itself, not left to the vagaries of state law . . . Thus, Congress intended that the enhancement provision be triggered by crimes having certain specified elements, not by crimes that happened to be labeled "robbery" or "burglary" by the laws of the State of Conviction.

*Taylor v. United States*, 495 U.S. 575, 588–589 (7th Cir. 1990). The Seventh Circuit's jurisprudence with respect to ACCA, including the categorical approach, applies with equal force to "closely analogous" career offender Guidelines. *United States v. Lynn*, 851 F.3d 786, 796 n.17 (7th Cir. 2017). But, as explained before, there is no way to get the elements of conspiracy to commit murder to match the elements of murder. Rather than interpreting "is," like the application notes interpret "prohibits" in the definition of "controlled substance offense," the

application notes are simply *adding* an extra offense—conspiracy to commit murder—which clearly would not come in under the enumerated clause or the elements clause. As *Rollins* makes clear, and *D'Antoni* reiterates, this is impermissible.

Additionally, if the sentencing commission wanted to add inchoate offenses to the definition of "crime of violence," it was aware how to do so, as the elements clause illustrates. Section 4B1.2(a)(1) defines "crime of violence" as offenses involving "use*, attempted* use, or threatened use of physical force." However, the Sentencing Commission did not include inchoate offenses such as conspiracy in the enumerated clause. *Chappelle*, No. 13-CR-986-LTS, 2020 WL 5441541, at *3 ("[T]he Sentencing Commission did not include inchoate offenses such as conspiracy or attempt in the guideline's list of specific offenses . . . [so] it appears that Application Note 1 adds to, and does not merely explain the application of, the guideline."); *see also United States v. Cooper*, 410 F. Supp. 3d 769, 773 (S.D.W. Va. 2019) ("[T]he text lists 'attempted use' of physical force as a crime of violence, suggesting the Sentencing Commission made an explicit choice to include some inchoate crimes and exclude others, such as conspiracy.").

The Court finds that the textual differences described above, as well as the Sentencing Commission's failure to include inchoate offenses, support a finding that the application notes conflict with the Guidelines definition of "crime of violence" and are not owed deference.

The holdings of *United States v. Adams* and *United States v. Smith* do not compel a different conclusion. In *Adams*, the Seventh Circuit considered whether a sentence enhancement was proper for a defendant who had a conviction for conspiracy to distribute methamphetamine. *Adams*, 934 F.3d at 727. Adams argued that his conspiracy conviction was not a controlled substance offense because the text of § 4B1.2 did not include drug conspiracies or other inchoate

13

drug crimes, so the application note constituted an impermissible addition. *Id.* The court held that the application note was a permissible interpretation of the Guidelines, as to controlled substance offenses. *Id.* at 729. In doing so, the court explicitly relied on *Raupp*. *Id.* (describing how Raupp held that "[t]here cannot be a conflict because the text of § 4B1.2(a) does not tell us, one way or another, whether inchoate offenses are included or excluded".) However, the court distinguished the portion of *Raupp* that dealt with the "now-abandoned residual clause":

> The "controlled substance offense" definition at issue here does not involve any of the complications presented by the residual clauses in definitions of violent crimes. The *Raupp* analysis of this purely textual issue under § 2K2.1 and § 4B1.2 thus remains sound as applied to the Guidelines' definitions of *controlled substance offenses*.

*Id.* (emphasis added). In *Smith*, the court similarly cabined its holding to "controlled substance offenses." Smith argued that a prior conviction for conspiracy to possess with intent to distribute cocaine did not qualify as a "controlled substance offense." *Smith*, 989 F.3d at 584. The court noted that it saw no reason to diverge from the precedent set in *Adams*, where the Seventh Circuit "held that the term 'controlled substance offense' encompasses inchoate offenses." *Id.* at 585. No part of the court's decision indicated that the analysis for "crime[s] of violence" would be the same. However, as described above, *Adams* explicitly leaves open that it could be different given the history surrounding the residual clause.

Next, the Government argues that the Seventh Circuit has broadly found that "inchoate versions of murder" qualify as "crime[s] of violence" under the Guidelines. (DE 49 at 7.) The Government points to the unpublished case *United States v. Lomax*, 743 Fed. Appx. 678, 683 (7th Cir. 2018). *Lomax* held that attempted murder was a crime of violence, but in doing so primarily relied on *Michael Hill v. United States*, 877 F.3d 717 (7th Cir. 2017). In *Michael Hill*, the Seventh Circuit held that attempted murder would come in under the *elements* clause. Under

the elements clause, a crime that has the "attempted use . . . of physical force" is a "crime of violence." The Court in *Michael Hill* reasoned that "attempt to commit a crime should be treated as an attempt to commit every element of that crime and [since the force clause indicates that an] attempt at physical force suffices to label the crime itself a violent felony, it follows that an attempt to commit a violent felony is itself a violent felony." *Id.* at 719 (citing *Morris v. United States*, 827 F.3d 696, 698–99 (7th Cir. 2016) (Hamilton, J., concurring.). However, "[a]ttempt requires intent to commit the completed crime *plus* a substantial step toward its completion." *See Morris*, 827 F.3d at 698. Because conspiracy to commit murder does not require a substantial step, it is clear that conspiracy to commit murder would not similarly come in under the elements clause.

*Lomax* also relied on another case: *Antoine Hill v. United States*, 827 F.3d 560 (2016). After finding that attempted murder was a "crime of violence" under the reasoning of *Michael Hill*, the Seventh Circuit wrote the following in three brief lines:

> We also conclude that Anthony's Indiana attempted-murder conviction is a crime of violence under the reasoning of *Antoine Hill v. United States*, 827 F.3d 560 (7th Cir. 2016). There we held that Illinois attempted murder is a crime of violence under the career-offender guideline because U.S.S.G. § 4B1.2(a)(1) says that a "'crime of violence' include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such crimes." The guideline at issue here and in *Antoine Hill* is the same.

The Court does not believe that these three brief lines have precedential value for two reasons. First, this statement was dicta, and so is not authoritative. *See United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (Dicta "is the part of an opinion that a later court, even if it is an inferior court, is free to reject.") In *Crawley*, the Seventh Circuit articulated a few reasons why a passage might be dicta, including that "the passage [is] unnecessary to the outcome of the earlier case and therefore perhaps not as fully considered as it would have been if it were essential to the

15

outcome" and that "the passage was not an integral part of the earlier opinion—it can be sloughed off without damaging the analytical structure of the opinion, and so it was a redundant part of that opinion and, again, may not have been fully considered." *Crawley*, 837 F.2d at 292. These are both "reasons for thinking that a particular passage was not a fully measured judicial pronouncement, that it was not likely to be relied on by readers, and indeed that it may not have been part of the decision that resolved the case or controversy on which the court's jurisdiction depended (if a federal court)." *Id.* at 293. Here, *Lomax*'s reliance on *Antoine Hill* came after a lengthy discussion of *Michael Hill*. Meaning, the Seventh Circuit had already concluded that attempted murder was a "crime of violence" under the elements clause, so any discussion of *Hill* and the application note was unnecessary to the holding that attempted murder was a "crime of violence." Second, *Antoine Hill* itself was decided before the amended version of Guideline § 4B1.2 was released in August 2016 and also before *Rollins* considered, at length, the relationship between the residual clause and the commentary. Additionally, neither *Hill* nor *Lomax* were faced with the issue of determining whether the commentary conflicted with the Guidelines, which *Rollins* and *D'Antoni* both addressed at length. Furthermore, neither *Hill* nor *Lomax* specifically addressed conspiracy crimes, which involve different considerations than attempt crimes. Accordingly, the Court will follow the holdings of *Rollins* and *D'Antoni*, which explicitly addressed the role of the commentary at length, rather than the dicta in *Lomax* and the holding of *Hill*, which came prior to *Rollins* and the amended Guidelines in 2016.

**B.     Conclusion**

For the foregoing reasons, the Court has determined that Chick's prior conviction for conspiracy to commit murder does not constitute a "crime of violence." Accordingly, Chick's base offense level is not 22. Rather, because the offense involved a semiautomatic firearm, and

16

because he was a prohibited person, the base offense level is 20. *See* § 2K2.1(a)(4)(B) (Base offense level is 20 if "the (i) offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine . . . and (ii) defendant (I) was a prohibited person at the time the defendant committed the instant offense").

SO ORDERED.

ENTERED: March 3, 2022

                                      /s/ JON E. DEGUILIO
Chief Judge
United States District Court